UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UPSTATE JOBS PARTY, MARTIN BABINEC, and
JOHN BULLIS,

*Plaintiffs*,

-against-

18-cv-459 (GTS/ATB)

PETER S. KOSINSKI, New York State Board of
Elections Co-Chair Commissioner, DOUGLAS A.
KELLNER, New York State Board of Elections Co-
Chair Commissioner, ANDREW J. SPANO, New
York State Board of Elections Commissioner, and
GREGORY P. PETERSON, New York State Board
of Elections Commissioner, all in their official
capacities.

*Defendants*.

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRELIMINARY INJUNCTION**

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

William A. Scott
Assistant Attorney General, of Counsel
Bar Roll No. 512434
Telephone:  (518) 776-2255
Fax:  (518) 915-7740 (Not for service of papers)          Date: April 30, 2018

# **Table of Contents**

Preliminary Statement ................................................................................................. 1

Statement of Facts ...................................................................................................... 3

Argument ..................................................................................................................... 6

  **I.  Standard for a Preliminary Injunction** ........................................................ 6

  **II. Plaintiffs Have Failed to Demonstrate a Substantial Likelihood of Success on the Merits** ...................................................................................................... 8

     A.  Housekeeping Accounts ..................................................................... 11

     B. Contribution Limits to an Independent Body ................................... 14

     C. Contribution Limits from an Independent Body to its Candidate ..... 17

     D. Primary Fund Raising ...................................................................... 21

  **III.  The Balancing of the Equities Weighs in Favor of Maintaining the Status Quo and the Granting of an Injunction is Against the Public Interest** ............................ 23

Conclusion ................................................................................................................ 24

# Table of Authorities

**Cases**

Beal v. Stern, 184 F.3d 177 (2d Cir. 1999) .............................................................. 6

Buckley v. Valeo, 424 U.S. 1 (1976) ...................................................................... 10

California Democratic Party v. Jones, 530 U. S. 567 (2000) ...................................... 18

City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985) ......................... 7, 11

Cohen v State of New York, 94 N.Y.2d 1 (1999) ........................................................ 8

Colorado Republican Federal Campaign Committee, 518 U.S. 604 (1996) .............. 18

Cranley v. Nat'l Life Ins. Co., 318 F.3d 105 (2d Cir. 2003) ...................................... 7

Davis v Federal Election Com'n, 554 U.S. 724 (2008) ............................... 9, 14, 19, 20

Davis v New York State Board of Elections, 689 Fed.Appx. 665 (2d Cir. 2017) ......... 5

Fed. Election Comm'n v. Colorado Republican Fed. Campaign Comm., 533 U.S. 431 (2001).... 13

Federal Election Commission v Beaumont, 539 U.S. 146 (2003) .......................... 8, 16

Federal Election Commission v Colorado Republican Federal Campaign Committee, 518 U.S.
    604, 616 (1996) ............................................................................................... 12

Holmes v Federal Election Commission, 71 F.Supp.3d 178 (D.D.C. 2014) ............... 20

Holmes v Federal Election Commission, 875 F.3d 1153 (D.C. Cir. 2017) ................. 22

LaValle v. Hayden, 98 N.Y.2d 155 (2002) ............................................................. 8, 9

McConnell v. Federal Election Commission, 540 U.S. 93 (2003) ............................ 15

McCutcheon v. FEC, 134 S. Ct. 1434 (2014) ............................................. 7, 10, 16

Merced v. Spano, 2016 WL 3906646 (E.D.N.Y. 2016) ..................................... 23, 24

Moran Towing Corp. v. Urbach, 99 N.Y.2d 443 (2003) .......................................... 7, 9

National Council of Arab Americans v. City of New York, 331 F.Supp.2d 258 (S.D.N.Y. 2004)
    ......................................................................................................................... 23

New York State Board of Elections v. Lopez Torres. 552 U.S. 196 (2008) ............... 17

Nixon v Shrink Missouri Government PAC,  528 U.S. 377 (2000) ......................... 9, 15

Norman v. Reed, 502 U. S. 279 (1992) ................................................................... 18

Ognibene v. Parkes, 671 F.3d 174 (2nd Cir. 2011) .................................................. 9

Overstock.com, Inc., v N.Y. State Dep't of Taxation & Fin., 20 N.Y.3d 586 (2013) ... 8

Paterson v. Univ. of State of N. Y., 14 N.Y.2d 432 (1964) ......................................... 8

Purcell v. Gonzalez, 549 U.S. 1 (2006) ................................................................. 24

Randall v Sorrell, 548 U.S. 230 (2006) ..................................................... 9, 18, 19

Riddle v Hickenlooper, 742 F.3d 922 (10th Cir. 2014) .............................. 20, 21, 22

Sunward Electronics v. McDonald, 362 F3d 17 (2d Cir. 2004) ................................. 6

Timmons v Twin Cities Area New Party, 520 U.S. 351 (1997) .............................. 8, 9

Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964 (2d Cir. 1995) ................. 23

U.S. v. Playboy Entertainment Group, 529 U.S. 803 (2000) ................................... 14

United States v. Salerno, 481 U.S. 739 (1987) ......................................................... 7

Vermont Right to Life Committee v Sorrell, 758 F.3d 118 (2nd Cir 2014) ............... 10

Winter v. Nat. Res. Def. Council, 555 U.S. 7 (2008) ............................................................. 1, 6

**Statutes**

N.Y. Civil Service Law §27 ....................................................................................................... 4
N.Y. Corrections Law §271 ....................................................................................................... 4
N.Y. Elec. Law §6-138(3)(f) ...................................................................................................... 5
N.Y. Election Law §§14-100 et seq. .......................................................................................... 4
N.Y. Election Law §1-102 ........................................................................................................ 12
N.Y. Election Law §1-104 (9) .................................................................................................... 4
N.Y. Election Law §1-104(12) ........................................................................................... 3, 5, 17
N.Y. Election Law §1-104(3) ............................................................................................ 1, 3, 16
N.Y. Election Law §1-104(6) .................................................................................................. 3, 6
N.Y. Election Law §14-100 (15) ............................................................................................... 13
N.Y. Election Law §14-100 (16) ............................................................................................... 12
N.Y. Election Law §14-100(10) .................................................................................................. 6
N.Y. Election Law §14-100(11) .................................................................................................. 7
N.Y. Election Law §14-100(9)(3) .............................................................................................. 15
N.Y. Election Law §14-107-a .................................................................................................... 13
N.Y. Election Law §14-107-a (2) .............................................................................................. 12
N.Y. Election Law §14-114 ....................................................................................................... 22
N.Y. Election Law §14-114(1) .................................................................................................... 7
N.Y. Election Law §14-114(10) .................................................................................................. 7
N.Y. Election Law §14-114(3) ................................................................................................. 6, 7
N.Y. Election Law §14-116 (2) ................................................................................................. 12
N.Y. Election Law §14-124(3) .......................................................................................... 7, 11, 12
N.Y. Election Law §2-102 .......................................................................................................... 4
N.Y. Election Law §2-104 .......................................................................................................... 4
N.Y. Election Law §2-114 .......................................................................................................... 4
N.Y. Election Law §2-116 .......................................................................................................... 4
N.Y. Election Law §2-118 .......................................................................................................... 4
N.Y. Election Law §5-300 .......................................................................................................... 4
N.Y. Election Law §6-110 .......................................................................................................... 7
N.Y. Election Law §7-104 ......................................................................................................... 17
N.Y. General Municipal Law §809 ............................................................................................ 4
N.Y. General Municipal Law §811 ............................................................................................ 4
N.Y. Judiciary Law §62 ............................................................................................................. 4
N.Y. Military Law §183 ............................................................................................................. 4
N.Y. Penal Law §195.20 ............................................................................................................ 5
N.Y. Penal Law §200.45 ............................................................................................................ 5
N.Y. Penal Law §200.50 ............................................................................................................ 5
N.Y. Public Officers Law §73 ................................................................................................... 4
N.Y. Public Officers Law §73 [8-b] .......................................................................................... 4
N.Y. Racing and Wagering §101 ............................................................................................... 4

**Preliminary Statement**

Plaintiff Upstate Jobs Party ("UJP") is an Independent Body as defined by New York State Election Law.  Plaintiff Martin Babinec is a member of UJP and Plaintiff John Bullis[1] is UJP's chairman and executive director.  The Plaintiffs allege that their First Amendment and Fourteenth Amendment Equal Protection rights have been violated as they are treated less favorably than political parties ("Party").  Parties in New York are "any political organization which at the last preceding election for governor polled at least fifty thousand votes for its candidate for governor."  N.Y. Election Law §1-104 (3).

The Plaintiffs claim that their rights have been violated because UJP is unable to establish a "housekeeping account," its individual members are unable to contribute to UJP as though it were a Party, as UJP cannot make uncapped donations to its candidate(s), and UJP cannot fundraise for a primary election.  The Plaintiffs seek a preliminary injunction: 1) Allowing UJP to create a "Housekeeping Account;" 2) Allowing UJP to donate to UJP candidates in the same fashion as Parties (as that term is defined by the Election Law); 3) Allowing Plaintiff Babinec to contribute to UJP as though UJP were a Party, and; 4) Allowing UJP to fundraise for a primary election.

As set forth below the Plaintiffs are not entitled to a preliminary injunction as they are unable to establish a likelihood of success on the merits, that the equities weigh against the granting of a preliminary injunction and that such an injunction would be against the public interest.  See e.g., Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008).

Moreover, the division between Independent Bodies and Parties finds its basis in well-

---

1 Though named individually, Mr. Bullis does not seek any specific relief in either the Complaint or in the Plaintiffs'

reasoned law and the application of different financing rules to these two types of entities does not violate the Plaintiffs free speech or equal protection rights.  Furthermore, the current "emergency" is one of the Plaintiffs' own creation.  UJP has been in existence since 2016, the laws at issue have existed in their current form since at least 2016, and the date of the upcoming election was known since the Governor began his current term.  Had the Plaintiffs wished to challenge the relevant portions of the Election Law they could have easily done so well before there was an alleged need for a preliminary injunction.  As such, the Plaintiffs' motion for a preliminary injunction must be denied.

---

request for a preliminary injunction.

**Statement of Facts**

Under the laws challenged by the Plaintiffs, New York has developed one of the most robust third-party systems in the nation.  New York currently recognizes eight separate Parties, each of which has met the relatively nominal standards set in New York for a group to be recognized as a Party.[2]  As relevant to the current matter, New York State's Election Law creates three classifications of political entities; Parties, Committees[3] and Independent Bodies.  N.Y. Election Law §1-104(3); §1-104(6); and §1-104(12)  Plaintiff UJP is an Independent Body, which was formed in 2016, when Mr. Babinec chose to run for Congress.

A Party is formed if a candidate for any Independent Body receives at least 50,000 votes during a gubernatorial election.  N.Y. Election Law §1-104(3).  Once an organization obtains Party status it may, as relevant here; fundraise for elections, create a housekeeping account for Party related expenses, and make uncapped transfers to Party candidates.  Additionally, individuals who wish to contribute to a Party may do so up to $109,600.00, while contributions to an Independent Body are based upon the contribution limits for candidates who have authorized the body and other factors.[4]

Parties are significantly regulated by the New York Election Law.  Once a Party comes into being by garnering 50,000 votes for its gubernatorial nominee, the Party is required to file

---

2 New York is surpassed only by Mississippi with its ten political parties, and Florida and South Carolina, which recognize nine political parties.

3 For the purposes of the current discussion the distinction between a Committee and a Party is irrelevant.  However, in short, a Committee is a subgroup of a Party chosen "to represent the members of a party in any political unit." NY Election Law §1-104(6).  For campaign finance purposes, Article 14 of N.Y. Election Law sets forth the provisions concerning campaign receipts and expenditures, and applicable contribution limits. N.Y. Election Law § 14-100 (1) (defines political committee); § 14-100 (2) (defines party committee); § 14-100 (3), (4) (defines constituted committees and duly constituted subcommittees of a county committee).

4 The Court is referred to the accompanying declaration of Brian Quail, which details the various ways in which an Independent Body's contribution limits could be impacted.  However, in short, that limit is not necessarily set at the $44,000.00 limit attributable to individual donors, and as referenced by the Plaintiffs.

rules (N.Y. Election Law §2-114); enroll party members through boards of elections (N.Y. Election Law §5-300);  submit to selecting future nominees for election to public or party office through specified procedures and in most instances primary elections (N.Y. Election Law §1-104 (9); form a state committee to be elected from the enrollees of the party (N.Y. Election Law §2-102); form county committees in New York's 62 counties or their equivalent, typically involving electing two or more enrollees to be committee people in New York's 15,500 election districts (N.Y. Election Law §2-104); file any rules or changes to rules before they are effective either at the state or county level (N.Y. Election Law §2-114); fill vacancies in Party positions in accordance with statutory procedures and provide due process before removing officers or members (N.Y. Election Law §§2-116; 2-118); limited in its contributions and required to make disclosures of all of its financial activities related to an election or not (N.Y. Election Law §§14-100 et seq.).

Strictures and regulations are also placed on Parties by statutes other than the Election Law.  Certain Party officers must file detailed financial disclosure statements or other disclosures (N.Y. General Municipal Law §§811; 809).  Certain political party officers are excluded from certain employments or appointments to public offices (N.Y. Civil Service Law §27; Corrections Law §271; Judiciary Law §62).  Certain party officers are excluded from engaging in financial dealings with the state and certain municipalities (N.Y. Public Officers Law §73), cannot "serve as a judge of any court of record." (N.Y. Public Officers Law §73 [8-b]), and are excluded from holding certain licenses (N.Y. Racing and Wagering §101).   Parties are subject to prohibitions on use of certain facilities (See e.g., N.Y. Military Law §183).  Party officers are subject to specific criminal prohibitions having as an element thereof status as a party officer (See e.g.,

Penal Law §§ 195.20; 200.45; 200.50).[5]

In contrast to the significant regulation imposed on Parties, Independent Bodies are loosely defined by law, being any "organization" or "group of voters" which nominates a candidate for any public office.  See N.Y. Election Law §1-104(12). There are no organizational requirements imposed on Independent Bodies, which may take any form.  They may have rules or not.  They may define their scope and govern their affairs as they see fit.  However, "the mere fact that a prospective candidate provides a name purporting to represent the 3,000 voters who signed his or her nominating petition does not transform that collection of voters into a cohesive political body."  Davis v. New York State Board of Elections, 689 Fed.Appx. 665, 670 (2d Cir. 2017) (holding that "the 'nominating body' need not be a 'body' at all; it can be an entirely fictional construction invented for the sole purpose of meeting the requirements of the Candidate Laws); see N.Y. Elec. Law §6-138(3)(f) (explaining that the purpose of having a nominating body name and emblem listed on a ballot is "to distinguish the candidates nominated thereby").

New York's Parties, on the other hand, represent large membership associational interests.  As of April 1, 2018, the Democratic Party has 5,621,811 active enrollees; the Republican Party, 2,632,341; the Conservative Party, 145,421 enrollees; Green Party, 26,462 enrollees; the Working Families Party, 41,019 enrollees; the Independence Party 436,312 enrollees; Reform Party, 1,802 enrollees; Women's Equality Party, 4,374 enrollees.

As relevant to the Plaintiffs' current challenge, N.Y. Election Law §14-124(3) allows a Party to create a segregated "housekeeping account," which is exempt from contribution and receipt limits but may not be used for promoting the candidacy of a specific candidate.  N.Y.

---

5 By way of example being a party officer is an element of a certain crime of defrauding the government.  N.Y.

5

Election Law §14-114(1), provides the method for calculating contribution limits for given elections and is read with 9 N.Y.C.R.R. §6214.0, which calculates the specific contribution limit for a particular office or election.  More particularly, 9 N.Y.C.R.R. §6214.0 dictates a campaign contribution limit of $44,000.00 for a statewide general election, and a limit of $109,600.00 to donate to a Party committee.  A Party can make unlimited transfers of funds to its candidates. See N.Y. Election Law §§14-100(9)(2); 14-100(10) and 14-114(3).

The Plaintiffs do not claim that they are eligible to become either a Party or a Committee and they do not challenge New York's statutory mechanism by which an Independent Body can become a Party.  Instead, they allege that UJP should be afforded the same privileges afforded to Parties.  The Plaintiffs specifically ask for an injunction allowing UJP to create a housekeeping account, make uncapped donations to their candidate(s), allowing Plaintiff Babinec to contribute to UJP as though UJP were a Party, and allowing UJP to fundraise for a primary election.

## Argument

### I.  Standard for a Preliminary Injunction

A plaintiff seeking a preliminary injunction must show that it is likely to succeed on the merits, that it will suffer irreparable harm absent an injunction, that the balance of the equities tips in its favor, and that an injunction is in the public interest.  See e.g., Winter, 555 U.S. at 20. Furthermore, where, as here, Plaintiffs seek to "alter, rather than maintain the status quo," they must demonstrate a substantial likelihood of success on the merits.  See e.g., Sunward Electronics v. McDonald, 362 F3d 17, 24 (2d Cir. 2004); see also Beal v. Stern, 184 F.3d 177, 122-23 (2d Cir. 1999).

---

Penal Law §195.20.

The Plaintiffs allege that the following sections of New York's Election Law violate both their First Amendment and Fourteenth Amendment equal protection rights, and seek an injunction preventing their enforcement:  1)N.Y. Election Law §14-124(3), which permits Parties, but not Independent Bodies, to establish housekeeping accounts; 2) N.Y. Election Law §14-114(1), (10) , which limits Plaintiff Babinec's contributions to UJP to $44,000.00, as compared to the amount of $109,600.00, which may be contributed to a Party; 3) N.Y. Election Law §14-114(1),(3), which allows Parties to contribute uncapped amounts to their candidates, and; 4) N.Y. Election Law §§14-100(11) and 6-110 which govern a Party's ability to fundraise for primary elections.

In order to establish a substantial likelihood of success on the merits relative to their First Amendment claims the Plaintiffs must demonstrate that the statutes at issue do not survive "intermediate scrutiny."  See McCutcheon v. FEC, 134 S. Ct. 1434, 1444-45 (2014).  Under intermediate scrutiny, the statues survive so long as they serve a sufficiently important interest. Id. However, as the Plaintiffs do not seek to have any portion of New York's Election Law invalidated, and instead argue against the law's disparate impact as applied.  Their claims are more appropriately characterized as an alleged equal protection violation, and they are unable to demonstrate that the laws at issue do not have a rational basis, the standard applied to such a claim.  See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985).[6]

---

6 The Plaintiffs' argue that the challenged statutes are unconstitutional as applied, and this memorandum address that argument and accompanying legal standard.  However, as presented the claims hew more closely to an allegation that the statutes are facially unconstitutional, and if the Plaintiffs' claims fail under the standard applied to an "as applied" challenge, they certainly fail under a facially invalid challenge.  To establish facial invalidity, the Plaintiffs "must establish that no set of circumstances exists under which the [statute] would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987).  Both the Second Circuit and the New York Court of Appeals apply this standard.  See Cranley v. Nat'l Life Ins. Co., 318 F.3d 105, 110 (2d Cir. 2003); Moran Towing Corp. v. Urbach, 99 N.Y.2d 443, 448 (2003) (applying "no set of circumstances" standard and stating that the challenging party "bears

Whether viewed under the intermediate scrutiny applicable to a First Amendment Claim, or under the rational basis standard applicable to an equal protection claim, the Plaintiffs' have failed to sustain their burden.  The division between Parties and other political entities has been recognized by the Supreme Court and does nothing to limit either the Plaintiffs' First or Fourteenth Amendment equal protection rights.  Furthermore, the Plaintiffs are seeking to upset longstanding election law in the State of New York by way of a preliminary injunction, which is a result of an alleged emergency that is entirely Plaintiffs' own creation.  As such, the Plaintiffs' request for a preliminary injunction must be denied in its entirety.

## II. Plaintiffs Have Failed to Demonstrate a Substantial Likelihood of Success on the Merits

In contrast to restrictions on political expenditures, "restrictions on political contributions have been treated as merely 'marginal' speech restrictions subject to relatively complaisant review under the First Amendment, because contributions lie closer to the edges than to the core of political expression."  Federal Election Commission v Beaumont, 539 U.S. 146, 161 (2003). In "deciding whether a state election law violates First and Fourteenth Amendment associational rights," courts must  examine the "character and magnitude" of the burden imposed against "the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." See Timmons v Twin Cities Area New Party, 520 U.S. 351, 355 (1997).  The degree of scrutiny applied depends on the burden imposed:

the substantial burden of demonstrating 'that in any degree and in every conceivable application, the law suffers wholesale constitutional impairment.'" (quoting Cohen v State of New York, 94 N.Y.2d 1, 8 (1999)); see also Overstock.com, Inc., v N.Y. State Dep't of Taxation & Fin., 20 N.Y.3d 586, 593 (2013).
The New York Court of Appeals has made clear that New York State's "[l]egislative enactments enjoy a strong presumption of constitutionality." LaValle v. Hayden, 98 N.Y.2d 155, 161 (2002) (citing Paterson v. Univ. of State of N. Y., 14 N.Y.2d 432, 438 (1964)).  Moreover, a party asserting a facial challenge to a statute must "surmount the presumption of constitutionality accorded to legislative enactments by proof 'beyond a reasonable doubt.'" Moran

> Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms.

Timmons, 520 U.S. at 355 (internal citations and quotations omitted).

In cases involving contribution limits, discernment of "the outer limits of contribution regulation" requires an analysis of "whether the contribution limitation was so radical in effect as to render political association ineffective, drive the sound of a candidate's voice below the level of notice, and render contributions pointless." Nixon v Shrink Missouri Government PAC, 528 U.S. 377, 397 (2000). In this examination, contribution limits "need only be closely drawn to match a sufficiently important interest to survive a constitutional challenge." Randall v Sorrell, 548 U.S. 230, 247 (2006). Courts cannot "determine with any degree of exactitude the precise restriction necessary to carry out [a contribution limit] statute's legitimate objectives. In practice, the legislature is better equipped to make such empirical judgments, as legislators have 'particular expertise' in matters related to the costs and nature of running for office." Id. at 248; see also Ognibene v. Parkes, 671 F.3d 174, 189 (2nd Cir. 2011). When a contribution limit is claimed to be too restrictive, the courts extend "a measure of deference to the judgment of the legislative body that enacted the law." Davis v Federal Election Com'n, 554 U.S. 724, 737 (2008).

The Second Circuit has articulated the standard for review of contribution limits:

> Contribution limits are more leniently reviewed (as compared to

---

Towing, 99 N.Y.2d at 448 (citing LaValle v. Hayden, 98 N.Y.2d 155, 161 (2002)).

> expenditure limits) because they pose only indirect constraints on speech and associational rights. Contribution limitations or bans are permissible as long as they are closely drawn to address a sufficiently important state interest. The Supreme Court recently stated that campaign finance restrictions must target pro quo corruption or its appearance in order to survive First Amendment scrutiny. Special deference is due to the legislature's selection of the precise contribution amount limits.

Vermont Right to Life Committee v Sorrell, 758 F.3d 118, 140 (2nd Cir. 2014) (internal citations and quotations omitted).

For decades, intermediate scrutiny has been applied to statutes affecting campaign contributions, and that standard was recently re-affirmed by the Supreme Court.  See McCutcheon, 134 S. Ct. at 1444-45.  McCutcheon explained that in Buckley v. Valeo, 424 U.S. 1 (1976), the Court distinguished between expenditure limits and contribution limits.  While expenditure limits were subjected to "exacting scrutiny," contribution limits were subject to a lesser standard of review, under which "'[e]ven a significant interference' with protected rights of political association may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms.'"  McCutcheon, 134 S. Ct. at 1444 (quoting Buckley, 424, U.S. at 25 [internal quotation marks omitted]).  In McCutcheon, the Court saw "no need . . . to revisit Buckley's distinction between contributions and expenditures and the corollary distinction in the applicable standards of review."  Id. at 1445.  Accordingly, the intermediate, "closely drawn" standard of review, and not strict scrutiny, applies to statutory provisions affecting campaign contributions.

The standard is even more lenient for claims that allege a violation of a party's equal protection rights.  In those circumstances, a statute is presumed to be constitutional, and not to violate an entity's equal protection rights if it is "rationally related to a legitimate state interest."

10

City of Cleburne, 473 U.S. at 440.

With these standards in mind, an examination of the items of relief requested by the Plaintiffs demonstrates that they have failed to show that they are likely to succeed on the merits of their claims, as the statutes at issue serve to avoid *quid pro quo* corruption, and are rationally related to a legitimate government interest.

## A. Housekeeping Accounts

The first item of relief requested by the Plaintiffs is to allow UJP to establish a housekeeping account.  Housekeeping funds reflect, in many ways, a restriction on Parties, not a benefit. Unlike other entities, including Independent Bodies, a Party cannot structure itself to avoid disclosing non-election related expenses.  The requirement that Parties disclose election expenses and non-election related expenses is a manifestation of how tightly regulated Parties are in New York.

Housekeeping accounts for Parties are a feature of New York's campaign finance system as well as the federal system.  Under New York Law, contribution and receipt limits do not apply to "expenditures made by party committees to maintain a permanent headquarters and staff, and carry on ordinary activities which are not for the express purpose of promoting the candidacy of specific candidates." N.Y. Election Law §14-124(3).  These monies, however, must be "deposited in a segregated account" and are subject to disclosure. Id.; Chapter 71 Laws of 1988.

Notably, with respect to housekeeping funds, the Supreme Court "recognize[d] that FECA (the Federal Election Campaign Act) permits unregulated 'soft money' contributions to a party for certain activities, such as electing candidates for state office…or for voter registration and 'get out the vote' drives." Federal Election Commission v Colorado Republican Federal

Campaign Committee, 518 U.S. 604, 616 (1996).

Prior to 1988, N.Y. Election Law §14-124 (3) permitted Parties to receive unlimited housekeeping contributions without disclosing either the contributions or expenditures.  Party housekeeping accounts were thus treated at that time the same as any entity that was not engaging in election-related activities.  But in 1988, the law was amended (Chapter 71) to impose a disclosure requirement for housekeeping activity, and since then Parties in New York cannot establish separate accounts or organs to engage in non-election related activities without full disclosure of contributions in and expenditures out.

A non-party entity or other organization looking to enter the political arena can organize in various interrelated configurations that largely permit them to achieve the same results as housekeeping accounts.[7]  For activities that are wholly unrelated to an election, such as research, voter registration, public policy and issue advocacy (with the exception of disclosures relative to certain ballot propositions, see N.Y. Election Law §1-102), an entity can organize a sub-entity that has no disclosure requirement under the election law and can raise unlimited funds.  The same entity can organize a separate PAC, subject to the provisions of N.Y. Election Law §14-100 (16), §14-107-a (2), and §14-116 (2), to raise funds to make contributions to candidates, with unlimited contributions into such entity.  Additionally, in various permutations with modest restrictions, the same entity could create a multi-candidate authorized committee to engage in direct campaign activity coordinated with candidates.  The same entity may, in turn, also form an Independent Expenditure Committee, subject to the provisions of N.Y. Election Law §14-100

---

[7] As discussed below, this factor also weighs against the Plaintiffs in determining the equity of issuing a preliminary injunction, as the Plaintiffs can achieve the same goal without injunctive relief that would upset longstanding election procedures.

(15), and §14-107-a, to engage in unlimited fundraising and spending with respect to certain candidates.

In fact, as detailed in the accompanying declaration of Brian Quail, it appears that such an independent expenditure committee was formed by the Plaintiffs.  The "Upstate Jobs Committee" was registered with the New York State Board of Elections on October 26, 2017 as an Independent Expenditure Committee to support candidate Ben Walsh in the 2017 Syracuse mayoral race with both Mr. Babinec and Mr. Bullis identified as persons who exert managerial influence or control over the committee.

As such, the Plaintiffs cannot establish that their First Amendment rights have been violated, as their purported use of a housekeeping account could be achieved through other mechanisms, and without the need for a preliminary injunction.

The creation and regulation of housekeeping accounts allows Parties to fund expenditures that are unique to their position, while simultaneously providing the State with oversight of said accounts to avoid malfeasance, particularly *quid pro quo* corruption.  This regulation also serves to prevent the circumvention of contribution limits, which is itself a legitimate government interest.  See Fed. Election Comm'n v. Colorado Republican Fed. Campaign Comm., 533 U.S. 431, 456 (2001) ("[A]ll Members of the Court agree that circumvention is a valid theory of corruption").  As such, the statutes relative to housekeeping accounts survive an examination under intermediate scrutiny, and the Plaintiffs are unlikely to succeed on their First Amendment claims.

The case law cited by the Plaintiffs concerns statutes that, on their face, restrict the content of a particular type of speech, or that restrict an individuals' right to contribute to a

particular candidate.  See U.S. v. Playboy Entertainment Group, 529 U.S. 803 (2000) (discussing

law imposing a ban on a particular type speech); Davis v. FEC, 554 U.S. 724 (2008) (discussing

contribution limits between candidates who are self-financed and those who are not).  The

Plaintiffs' claims relative to housekeeping accounts also fail under a Fourteenth Amendment

equal protection review.  Because Parties, unlike Independent Bodies, have many statutorily

imposed requirements requiring a statewide presence, as described supra, for purposes of an

Equal Protection analysis, Parties and independent bodies are simply not similarly situated.

Furthermore, while the Election Law permits the creation of a housekeeping account it does not

restrict any entity's ability to contribute to a particular candidate, Party or Independent Body.

Furthermore, as the Plaintiffs' claims fail under intermediate scrutiny, they certainly cannot

survive the lesser rational basis review afforded to an equal protection claim.

Based on the foregoing, the Plaintiffs' have failed to establish a substantial likelihood of

success as to their claim that the law preventing Independent Bodies from maintaining

housekeeping accounts violates either their First Amendment or Fourteenth Amendment equal

protection rights.

## B. Contribution Limits to an Independent Body

The Plaintiffs next argue that Plaintiff Babinec's First Amendment right to free speech is

restricted as he may only donate $44,000.00[8] to the UJP, while contributions to Parties are

capped at $109,600.  However, none of the case law cited by the Plaintiffs stands for the

---

8 As set forth in the declaration of Brian Quail, the specific limit would in reality depend on how the campaign
committee was organized and/or authorized.

proposition that an individual has a constitutionally protected right to contribute to an entity that is neither a Party nor a candidate.  Of course, if Mr. Babinec were the party's candidate for governor there would be no limit on the amount he could contribute to his own campaign.  See N.Y. Election Law §14-100(9)(3).

The Plaintiffs' First Amendment claim directed toward personal contribution limits is insufficient.  Plaintiffs have compared the contribution limit for a candidate "fielded" by the Upstate Jobs Party in a statewide contest ($44,000) with the contribution limit for Party and Constituted Committees ($109,600). (Complaint ¶ 67).  This First Amendment question turns simply on "whether there was any showing that the limits were so low as to impede the ability of candidates to "amas[s] the resources necessary for effective advocacy."  Nixon v Shrink Missouri Government PAC, 528 U.S. 377, 380 (2000).  Clearly New York's $44,000 statewide contribution limitation is not "so radical in effect as to render political association ineffective, drive the sound of a candidate's voice below the level of notice, and render contributions pointless." Id. 397; see also McConnell v. Federal Election Commission, 540 U.S. 93, 96 (2003) (observing test of whether candidate is prevented from "amassing the resources necessary for effective advocacy").

Moreover, the burden on Plaintiff, must be understood in the context of its actual members, assuming there are any.  Examined from this perspective it is clear the burden on them is slight at best.  In Beaumont, the Supreme Court in upholding the prohibition on corporate hard money contributions, observed "[a] ban on direct corporate contributions leave individual members of corporations free to make their own contributions, and deprives the public of little or no material information." Federal Election Commission v Beaumont, 539 US 146, 161 fn 8

15

(2003).

Plaintiffs have made no showing that their voice in the process has been reduced to a whisper.  Indeed, New York's hard money contribution limits are generous compared to most states.  See National Conference of State Legislatures, Contribution Limits to Candidates, 2017 – 2018 Election Cycle.[9]

The structure and size of Parties, which is not present for Independent Bodies, also goes towards avoiding the risks of *quid pro quo* corruption.  See McCutcheon, 134 S.Ct. 1452-53. The Supreme Court noted that the effect of an individual's contribution to a candidate is diluted, when that contribution comes as part of a larger donation from a Party and encompasses the donations of many individuals.  Id.  No such protections exist on donations from Independent Bodies, which, as set forth above, are much more loosely organized than Parties.  Based on the foregoing, the statutes relative to an individual's contribution limits pass the requisite intermediate scrutiny.

Turning to the Plaintiff's equal protection claims, Parties and Independent Bodies are simply not similarly situated for purposes of equal protection analysis.  Parties in New York are "any political organization which at the last preceding election for governor polled at least fifty thousand votes for its candidate for governor."  N.Y. Election Law §1-104 (3).[10]  In contrast, an independent body is "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a party."  N.Y. Election Law

---

9 Available at
http://www.ncsl.org/Portals/1/Documents/Elections/Contribution_Limits%20_to_Candidates_%202017-2018_16465.pdf .
10 Qualifying for party status in New York is prospective and lasts for four years from the entity receiving 50,000 votes for its candidate.  New York is one of the easiest states to achieve party status, in part because New York allows fusion voting where a candidate can be supported by more than one political party.  N.Y. Election Law §7-

§1-104 (12).  Both the United States Supreme Court and New York's Election Law recognize that Parties and independent bodies are different entities and they are treated accordingly.

For example, Parties are subject to certain restrictions and oversight, which Independent Bodies are not subjected to.  In <u>New York State Board of Elections v Lopez Torres</u>, an unanimous Supreme Court noted that while parties have significant associational rights "[t]hese rights are circumscribed, however, when the State gives the party a role in the election process— as New York has done here by giving certain parties the right to have their candidates appear with party endorsement on the general-election ballot.  And then also the State acquires a legitimate governmental interest in ensuring the fairness of the party's nominating process, enabling it to prescribe what that process must be." <u>New York State Board of Elections v. Lopez Torres.</u> 552 U.S. 196, 201 (2008).


Nothing prevents the Plaintiffs here from going about qualifying as a Party.  Once and if they do, the benefits and proscriptions of the rules related to parties will apply them, on an equal basis with others who have achieved such status.  However, the statutes challenged by the Plaintiffs' have not violated the Plaintiffs' equal protection rights, and their claims in this regard must fail as well.

### C. Contribution Limits from an Independent Body to its Candidate

While Parties may transfer an uncapped amount to a candidate (<u>see</u> Election Law §§ 14-100 (9) (2); (10)), an Independent Body does not have this same ability to make unlimited transfers.  However, if the Independent Body was the authorized committee of the candidate(s), it

---

104.

can make unlimited expenditures on behalf of the candidate(s) from contributions the committee has raised on behalf of the candidate(s).    Again, the Plaintiffs' claim that they should receive the same treatment as a Party more accurately sounds as an alleged violation of the Fourteenth Amendment, but the subject statute survives under either strict scrutiny or rational basis analysis. It is important to note again that the Plaintiffs do not claim that UJP is a Party, nor do they challenge the mechanism by which Parties are created in New York.  Instead, the Plaintiffs claim that Independent Bodies should receive the same differential treatment as Parties.

Parties have been treated differently from other classes of contributors because they are in fact differently situated.

The courts have long recognized that Parties may have higher limits in supporting candidates than other contributors.  In Colorado Republican Federal Campaign Committee v. Federal Election Commission, the Supreme Court recognized "FECA permits individuals to contribute more money ($20,000) to a party than to a candidate ($1,000) or to other political committees ($5,000)."  Colorado Republican Federal Campaign Committee, 518 U.S. 604, 616 (1996).  "In fact, rather than indicating a special fear of the corruptive influence of political parties, the legislative history demonstrates Congress' general desire to enhance what was seen as an important and legitimate role for political parties in American elections."  Id. at 618; see also, California Democratic Party v. Jones, 530 U. S. 567, 574 (2000); Norman v. Reed, 502 U. S. 279, 288 (1992).

In Randall v Sorrell, the Supreme Court struck down Vermont's contribution limits on Parties.  Randall, 548 U.S. 230, 262 (2006).  Analyzing the federal regime, the Court noted higher limits for Parties put in place by Congress reflected "an effort by Congress to balance (1)

18

the need to allow individuals to participate in the political process by contributing to political parties that held elect candidates with (2) the need to prevent the use of political parties 'to circumvent contribution limits that apply to individuals.'"  Id. at 258-59.  "[I]nsistence that political parties abide by *exactly* the same low contribution limits that apply to other contributors threatens harm to a particularly important political right, the right to associate in a political party."  Id. at 256 (emphasis in original).

Much of Plaintiff's argument hinges on the idea that Independent Bodies and Parties are commensurate yet are treated unequally under New York law.  To advance this argument, the plaintiffs rely heavily on Davis v. Federal Election Commission, 548 U.S. 724 (2008).  In Davis, the Supreme Court rejected contribution limits for self-funded candidates, but did not find, nor remotely infer, that differing contribution limits for different types of *contributors* were unconstitutional.

The holding in Davis, decided only on First Amendment grounds, was that more stringent contribution restrictions on a self-funding candidate vis-à-vis his or her opponent "imposes a substantial burden on the exercise of the First Amendment right to use personal funds for campaign speech."  Davis, 544 U.S. at 740.

The main holding in Davis quoted by Plaintiffs actually makes this point.  Davis held "imposing different contribution limits and coordinated party expenditure limits on candidates vying for the same seat is antithetical to the First Amendment."  Id. at 744.  Federal "contribution limits" for individuals, parties and political committees are three different amounts, and "coordinated party expenditure limits" that are functionally contributions are much higher.  Most significantly, the Court did not hold that contribution limits as between different entities,

differently situated, must be the same; rather, it held that the amount a given entity could contribute could not be more as between two candidates vying for the same office. Id. at 744. The offending dichotomy in Davis was as between candidates – one self-funding and one not, not a differentiation between types of contributors.

In Holmes, the court discussed this distinction and noted, with respect to primary limits, that "[w]hile plaintiffs may have been prevented from contributing $5,200 to their chosen candidates after their primary elections, Plaintiffs were only restricted to the exact same extent as any other individuals wishing to contribute more than the $2,600 per election." Holmes v Federal Election Commission, 71 F.Supp.3d 178, 187 (D.D.C. 2014); see also Riddle v Hickenlooper, 742 F.3d 922, 929 (10th Cir. 2014) (observing Davis was a "challenge to a law that allowed candidates to obtain more from individual contributors when an opponent had spent more than $350,000 in personal funds").

New York's campaign finance law does not impose "different contribution limits for candidates who are competing against each other." Davis, 544 U.S. at 738.  Any candidate can receive support from a political party on the same terms, and any candidate can receive the support of an independent body on the same terms.

UJP is not, nor does it allege to be, a Party.  The Plaintiffs are simply not similarly situated to a political party and, as the Supreme Court has noted, Parties are allowed to contribute in amounts greater than other entities and to allow otherwise improperly diminishes an individual's right of association.  Furthermore, donations through a Party, as discussed above, are such that they avoid the possibility of quid pro quo corruption, a presumption not afforded to Independent Bodies.  As such, the Plaintiffs' First Amendment claims fail as the subject statutes

meet the intermediate scrutiny test.

### D. Primary Fund Raising

Though the Plaintiffs' argue that a Party's ability to fund raise for a primary election creates a disparity between Parties and other entities, this argument ignores the simple fact that Independent Bodies are not required to conduct primary elections.  It also ignores the fact that Parties do not receive an additional limit for primaries.  Parties only receive one annual aggregate contribution limit for spending on all elections together.  Primary limits only apply to candidates participating in a contested primary and/or their authorized committees.  See N.Y. Election Law § 14-114.  In short, the Plaintiffs argue that they should be allowed to raise funds to use for a political event that will never occur.

In Riddle, as relied upon the Plaintiffs, the Court of Appeals found it offensive that a contributor in Colorado could contribute to the Republican and Democratic candidates a sum twice the amount such a contributor could give to other candidates.  Riddle, 742 F.3d at 928-29.  This was allowed because Colorado law provided for an automatic primary election limit for the Democratic and Republican candidates whether or not the candidates actually faced a contested primary election.  Id. at 924.  Colorado law also allowed the Democratic and Republican candidates to accept primary election contributions even after the date of the primary election. Id. at 930.  Judge Gorsuch, in a concurring opinion, also noted that not all "per-election" campaign finance schemes would be unconstitutional, going so far as to opine "[t]he federal government regulates campaign contributions on a per-election basis and manages to do so without any of the discrimination found in Colorado statutory law."  Id. at 933.  The majority of the court also implied that "the cost of a primary as a separate governmental interest," may be

sufficient for different contribution limits.  Id. at 928-29.

Plaintiff incorrectly asserts that New York improperly provides a similar benefit to Party candidates as addressed by the court in Riddle. Unlike the Colorado statute, however, New York's Party candidates may only receive a contribution for a primary election if such candidate actually has a contested primary election, and under New York law a primary election contribution must, with few exceptions, come before the primary election.  N.Y. Election Law §14-114.

Indeed, in Holmes v Federal Election Commission, the court found the federal per-election contribution limits, a system virtually indistinguishable from New York's, Constitutional.

As the District of Columbia Circuit observed:

> A per-election ceiling promotes the ability of candidates to gain adequate funding for each election in which they must compete. States, in exercising their constitutional authority to prescribe the time, place, and manner of electing Representatives and Senators, have adopted varying structures. A state might allow for only a single round of elections, it might adhere to the more conventional structure of a primary election followed by a general election, or it might also provide for runoff elections. A per-election ceiling enables a candidate to raise the same level of funds for each election, regardless of the number of elections in which a given state's regime might call for her to participate.

Holmes v Federal Election Commission, 875 F.3d 1153, 1165-66 (D.C. Cir. 2017) (internal citations and quotations omitted).

In short, neither the Plaintiffs' First nor Fourteenth Amendment rights are curtailed in being unable to fundraise for a primary, which they do not need to hold.  This would instead allow the Plaintiffs to amass a separate pool of funds that even Parties are not able to procure.

### III.  The Balancing of the Equities Weighs in Favor of Maintaining the Status Quo and the Granting of an Injunction is Against the Public Interest

In considering the weighing of the equities the Court must also consider whether the purported emergency is one of the plaintiff's own creation.  See e.g., National Council of Arab Americans v. City of New York, 331 F.Supp.2d 258, 266 (S.D.N.Y. 2004) (faulting the plaintiffs for their delay in seeking injunctive relief, which then called upon the defendants in a week to substantial constitutional challenge).  "[A] plaintiff who plays a role in the imposition of the injury does not come to the table with clean hands."  Merced v. Spano, 2016 WL 3906646, *2 (E.D.N.Y. 2016).  A plaintiff's ignorance of a defendant's actions may be sufficient to overcome a delay in acting, but where no such ignorance exists "delay alone may justify denial of a preliminary injunction."  Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 968 (2d Cir. 1995).  "[T]he courthouse is not an emergency room" existing to rectify "a contrived crisis."  Merced, 2016 WL at *2.

As set forth in the Plaintiffs' papers UJP has been in existence since at least 2016, and both individual Plaintiffs have been involved with the UJP since its inception.  The statutes and regulations that the Plaintiffs now challenge have been in place since at least the formation of the UJP, and the fact that a gubernatorial election would occur in 2018 is certainly common knowledge.  However, the Plaintiffs have failed to offer any explanation as to why they only seek to challenge long standing law in the State of New York only months before said election.  The Plaintiffs have had years to commence this action if they felt that New York law improperly restricted their ability to participate in the upcoming election.  Despite this they offer no explanation as to why their own delay constitutes an emergency purportedly entitling them to a preliminary injunction that would upset the law and regulations governing an election that is now

23

less than seven months away.  In the absence of such an explanation, the requested relief is

improper.  See Merced, 2016 WL at *2.  It was well within the Plaintiffs' ability to commence

this action long before the issue became an "emergency" and their failure to do so does not

convert this proceeding into a matter that requires injunctive relief.

 The Plaintiff's request would also serve to throw the election process into disarray, mere

months before the election itself.  The Supreme Court has held that States have a compelling

interest in maintaining the integrity of the election process.  See Purcell v. Gonzalez, 549 U.S. 1,

4 (2006).  As set forth in the accompanying declaration of Brian Quail, providing the Plaintiffs

with the relief requested would require significant alterations to the Board of Elections forms,

guidance documents, training materials and regulations.  The system would face the potential

bombardment of other individuals seeking to form Independent Bodies to avoid the strictures of

campaign finance law applicable to Parties.

 In short, the Plaintiffs' delay, the availability of alternative statutory mechanisms to

achieve the Plaintiffs' goals and the severe impact upon an impending election all serve to tip the

equities against granting the Plaintiffs' request for a preliminary injunction.

**Conclusion**

 For the reasons set forth above the Plaintiffs' request for a preliminary injunction must be

denied, together with such other and further relief as the Court deems proper and necessary.

Dated: Albany, New York
        April 30, 2018

                                    ERIC T. SCHNEIDERMAN
                                    Attorney General of the State of New York
                                    Attorney for Defendants
                                    The Capitol
                                    Albany, New York  12224-0341
                                    By: s / *William A. Scott*
                                    William A. Scott
                                    Assistant Attorney General, of Counsel
                                    Bar Roll No. 512434
                                    Telephone:  (518) 776-2255
                                    Email: William.Scott@ag.ny.gov


TO:    Michael Burger (VIA ECF)
       Fernando Santiago (VIA ECF)

25