UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UPSTATE JOBS PARTY, MARTIN BABINEC,
and JOHN BULLIS,

*Plaintiffs*,

-against-

PETER S. KOSINSKI, New York State Board of
Elections Co-Chair Commissioner, DOUGLAS A.
KELLNER, New York State Board of Elections Co-
Chair Commissioner, ANDREW J. SPANO, New
York State Board of Elections Commissioner, and
GREGORY P. PETERSON, New York State Board
of Elections Commissioner, all in their official
capacities.

*Defendants*.

**DECLARATION OF
BRIAN L. QUAIL**

18-cv-459 (GTS/ATB)

**BRIAN L. QUAIL** declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I serve as Co-Counsel of the New York State Board of Elections, and I have been employed by the State Board since 2014. I previously served as an Election Commissioner for Schenectady County for eight years.

2. I am familiar with the facts and circumstances of the above captioned case, and I make this Declaration based on such knowledge and my experience with New York Election Law, campaign finance and election administration.

3. New York currently recognizes eight separate Parties, each of which has met the empirical standard set in New York for a group to be recognized as a

1

Party.   As of April 1, 2018, the Democratic Party has 5,621,811 active enrollees; the Republican Party, 2,632,341 enrollees; the Conservative Party, 145,421 enrollees; Green Party, 26,462 enrollees; the Working Families Party, 41,019 enrollees; the Independence Party 436,312 enrollees; Reform Party, 1,802 enrollees; Women's Equality Party, 4,374 enrollees.

4.   New York is a fusion voting state.  A candidate can be supported by one or more Parties and Independent Bodies, and this is typical.   Fusion voting is the process whereby a candidate runs on multiple separate ballot lines, political Party and Independent Bodies, but the candidate's vote totals are added or "fused" together for a single vote tally for that candidate.

5.   For example, the candidate nominated by UJP referenced in Complaint Paragraph 17, Ben Walsh for Mayor of Syracuse, was also on the ballot as the Party candidate of both the Reform Party[1] and the Independence Party.  As such he was able to be supported by two Parties and an Independent Body.  See EXHIBIT "A".

6.   As relevant to the current matter, New York State's Election Law creates classifications of political entities for ballot access purposes of Parties and Independent Bodies. N.Y. Election Law §1-104(3); §1-104(6); and §1-104(12).

---

[1] On the ballot Mr. Walsh's name appeared in space reserved for the Reform Party and the UJP label was in the same ballot square.  The vote totals for the Reform Party and UJP, therefore, are indistinguishable.  Mr. Walsh received 12,351 votes ion the Independence Party line and 1,233 votes on the combined Reform Party / UJP line.

2

7. Plaintiff UJP claims to be an Independent Body which was formed in 2016 when Mr. Babinec chose to run for Congress.

8. Specifically, a Party is formed if a candidate for any Independent Body receives at least 50,000 votes on its independent nominating line at a gubernatorial election. N.Y. Election Law §1-104(3). Once an organization obtains Party status it may, as relevant to the current matter, fundraise for elections, create a housekeeping account for Party related expenses, and make uncapped transfers to Party candidates. Additionally, individuals who wish to contribute to a Party may do so up to $109,600.00.

9. Contribution limits to an Independent Body depend on how the Independent Body is organized for campaign finance purposes. Notably an Independent Body for ballot access purposes is not the same as an "independent expenditure committee" which is an entity that raises and spends money in a manner that is independent from and not coordinated with any candidate the entity supports. An Independent Body thus would be treated like any other campaign finance entity in accordance with its manner of organization – such as a Political Action Committee (PAC) or a candidate/multi-candidate authorized committee.

10. A PAC can receive significant contributions (subject to the provisions of N.Y. Election Law §14-100 (16), §14-107-a and §14-116 (2)) but may only

make contributions subject to the contribution limit of the recipient candidate or committee.

11. If an Independent Body organizes itself for campaign finance purposes as an authorized committee, its contribution limit would be equal to the aggregate of all of the candidate limits for the candidates authorizing the committee. For example, if an Independent Body was the authorized committee for three candidates for Statewide Office (Governor, Comptroller, Attorney General) the aggregate limit for the Independent Body would be $132,000 ($44,000 x 3).

12. The Plaintiffs in this case appear to have already created an independent expenditure committee (see Exhibit "B") which under New York Law has unlimited in-coming contribution limits (with a few exceptions) and is also unlimited in how much it can spend. However, an independent expenditure committee cannot coordinate with candidates.

13. Entities that do not engage in activities related to an election have no obligation to make disclosures pursuant to the Election Law.

14. Political parties must comply with the organizational requirements of the Election Law (Article 2), select their nominees through the procedures specified by law, most typically primary elections (Article 6). Many of these

requirements specified by law are outlined in the accompanying Memorandum of Law.

15. Political parties may have housekeeping accounts for purposes of maintaining Party infrastructure and non-election related expenses. These funds must be maintained in a segregated bank account, as provided by Election§ 14-124 (3).

16. Housekeeping funds, expressly not for election purposes, assist a Party in meeting its statutory organizational obligations. Housekeeping accounts are available to all Parties.

17. Organizations engaging exclusively in activities that are not election related generally have no obligations under Article 14 of the Election Law related to campaign finance rules. Persons wishing to engage in such activities can organize their election-related and non-election related activities separately. Contributions and expenditures related to the former would not be subject to limits or disclosure under the election law.

18. If the Court granted relief to the Plaintiffs herein, the well-considered statutory process that provides regulatory burdens and benefits to Parties (New York Election Law Art. 2) along with a Party committee contribution limit of $109,600 to Party committees, would be nullified. In its place, any persons who secure an independent nomination for any candidate for any office would be able

to claim Party status, along with a $109,600 contribution limit, unlimited ability to spend on candidates and Party housekeeping accounts. This overnight proliferation of "Parties" qualifying for the $109,600 contribution limit, in a context that is unregulated by Article 2 of the Election Law and other provisions of law, would greatly increase the risk of *quid pro quo* corruption.

19. By way of example, let us assume that a Candidate in a Town of 20,000 voters with a contribution limit of $1,000 (N.Y. Election Law § 14-114) is running for Town Supervisor. The Candidate is unsatisfied with the statutory contribution limit. Accordingly, he and a friend form an Independent Body, circulate an Independent nominating petition and by collecting the requisite signatures (at least 5% of the number votes cast for governor in the town in the last gubernatorial election (N.Y. Election Law § 6-142 (2)), thereby secures an independent nominating line for the November ballot. This is in addition to the Party line the Candidate in this hypothetical already appears on. If Independent Bodies suddenly qualify as a matter of course as "Parties," the Candidate will then file Party registration documents with the New York State Board of Elections and thus creates an ad-hoc Party committee which the Candidate controls and which is capable of supporting his campaign with a Contribution limit over 109 times that which would otherwise apply under the existing law.

20. While parties serve the purposes of aggregating associational interests and providing meaningful context to ballot access and ballot organization, the remedy that plaintiffs seek would merely eviscerate all candidate contribution limits.

21. A ruling in plaintiffs favor would bring confusion to the settled law of Parties and contribution limits. The State Board of Elections would face potentially many hundreds of new Party filings to process. How Independent Bodies would fit into a new framework where Parties and Independent Bodies are conflated would be confusing to Boards of Elections, contributors, Parties and Independent Bodies. The State Board's registration forms, guidance documents, training materials and regulations would need to be amended, but it would be unclear in what manner because the relief the plaintiffs' seek would so muddle New York's campaign finance system. The Supreme Court has held there is a compelling state interest in the integrity of an unfolding election process, and courts should avoid throwing the election process into disarray by granting preliminary injunctions (Purcell v. Gonzalez, 549 U.S. 1 (2006). This caution should apply in this case.

Dated: April 30, 2018

_____
Brian L. Quail